IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

TIMOTHY J. LACY,

        Plaintiff,

    Vs.                            No. 13-2376-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Timothy J. Lacy's ("Lacy") Title II application for disability insurance benefits and his Title XVI application for supplemental security income ("SSI") under the Social Security Act ("Act"). Born in 1977, Lacy alleges a disability onset set date of January 1, 2005, based on a combination of mental and physical impairments. The administrative law judge ("ALJ") filed his decision on July 5, 2012, finding that Lacy was not under a disability through the date of his decision. (Tr. 14-28). With the Appeals Council's denial of Lacy's request for review, the ALJ's decision stands as the Commissioner's final decision. The administrative record (Dk. 8) and the parties' briefs are on file pursuant to D. Kan. Rule 83.7.1 (Dks. 9, 14 and 19), the case is ripe for review and decision.

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but

mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful

activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id*. Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ found Lacy had not engaged in substantial gainful activity since the application's earliest alleged onset date of his

4

disability. At step two, the ALJ found the following severe impairments:

"degenerative changes of the lumbar spine, vision loss in the right eye, bipolar

disorder also diagnosed as major depressive disorder and depressive disorder

not otherwise specified, generalized anxiety disorder also diagnosed as anxiety

disorder not otherwise specified, and rule-out attention deficit hyperactivity

disorder." (Tr. 16). While Lacy testified to fibromyalgia, the ALJ found no

laboratory or clinical findings or medical observations that validated those

symptoms so as to make fibromyalgia medically determinable or a severe

impairment. The ALJ also noted the plaintiff's history included a diagnosis of

pedophilia, but the evidence showed this condition produced no more than

mild limitations.

At step three, the ALJ did not find that the impairments,

individually or together, equaled the severity of the Listing of Impairments. (R.

17). Before moving to steps four and five, the ALJ determined that Lacy had

the residual functional capacity ("RFC") to perform:

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c), or work
> requiring lifting and/or carrying 50 pounds occasionally and 25 pounds
> frequently, standing and/or walking for 6 hours out of an 8-hour
> workday, and sitting 6 hours out of an 8-hour workday. The claimant can
> frequently stoop, kneel, crouch, crawl, and climb ramps and stairs, and
> can occasionally balance. The claimant must avoid climbing ladders,
> ropes and scaffolds; he must avoid concentrated exposure to dangerous
> machinery and unprotected heights. The claimant can frequently use
> visual depth perception, field of vision and accommodation. The claimant
> can perform simple, routine, repetitive tasks that are not performed in a
> fast-paced production environment or as an integral part of a team; and
> he can occasionally interact with coworkers and the general public.

5

(Tr. 19). At step four, the ALJ found that the claimant's past relevant work as a grocery stocker was not precluded by this RFC. (Tr. 26). Alternatively, based on the vocational expert's testimony, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 27).

Lacy testified he was released from prison in the Fall of 2010 after being imprisoned approximately five and one-half years for "lascivious acts and indecent contact with a minor" and for escape while on work release. (Tr. 50, 52-53). Lacy also explained at the hearing that after committing these offenses for several years with three victims, he attempted suicide as he "was sick of living that life" so he confessed his conduct to a psychologist during his hospital intake evaluation. (Tr. 55-56). While in prison from 2005 through 2010, Lacy received psychiatric treatment and medications which he described as lacking, using excessive and inappropriate medications, and failing to diagnose a vitamin deficiency. (Tr. 57-59). Since his release from prison, Lacy has been taking Cymbalta for depression and anxiety and lacks the financial means for more medical treatment (Tr. 60), but he was hospitalized for a short time in Oswatomie State Hospital for suicidal thoughts (Tr. 62). Lacy lives with his father and has not worked or tried to work following his incarceration other than doing household chores that include mowing the lawn. (Tr. 50-51).

6

**ISSUE ONE:   SUBSTANTIAL EVIDENCE TO SUSTAIN RFC FINDING**

"Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). Because it is for the ALJ, not the physician, to determine the RFC from the medical record, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir.2012 (citation omitted). "In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file." *Wells v. Colvin*, 727 F.3d 1061, 1071–72 (10th Cir. 2013) (citing See SSR 96–8p, 1996 WL 374184, at *5). "The RFC determination necessarily reflects how the ALJ has respectively weighed the medical opinions of record." *Roggi v. Colvin*, 2013 WL 5304084 at *13 (D.Kan. Sept.20, 2013).

The plaintiff contends the ALJ's RFC finding is defective in erroneously discrediting his claims of disabling impairments. The ALJ here correctly noted that when a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, then it falls on the ALJ to make a finding on the credibility of the claimant's statements based on a consideration

of the entire case record. Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ found that the claimant's statements on "the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 20).

When analyzing evidence of pain and other symptoms, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in *Kepler*. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2002); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). A discussion of every relevant factor is not required for an evaluation of a claimant's pain or symptom testimony. *Bates v. Barnhart*, 222 F. Supp. 2d 1252, 1260 (D.Kan.2002). The ALJ, however, must explain and support with substantial evidence which part(s) of claimant's testimony were not believed and why. *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were

not credible. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. *White*, 287 F.3d at 909–910.

It is not for the court to reweigh the evidence or to substitute its judgment for that of the Commissioner. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Though the court is reviewing only the sufficiency of the evidence, the conclusions reached by the ALJ still must be reasonable and consistent with the evidence. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). Even if the evidence may support a contrary finding, one the court may have chosen if it were de novo review, it is not the court's role to displace the agency's choice between two fairly conflicting views. *Oldham v. Astrue*, 509 F.3d 1254, 1257–1258 (10th Cir. 2007).

The claimant did testify that he can experience "a great deal of pain" related to his back from doing "something as simple as setting (sic) at the computer and having my arm out using a mouse, having my arm out, things start to get tight clear up my arm into my shoulder into my neck, and it just spreads." (Tr. 46). But then in a follow-up question, the claimant also said

9

the back pain did not interfere with his ability to sit. (Tr. 46). Based on the claimant's ambiguous testimony about experiencing pain while sitting, the ALJ's credibility evaluation properly could include the lack of objective evidence supporting any limitation on sitting and on the claimant's daily activities that involve extended sitting. As for any significant limitations with walking and standing, the ALJ pointed to the normal physical examination results in 2005. A consultative exam in 2011 noted paraspinous muscle spasm but also found a full range of motion of dorsolumbar spine and "no difficulty with orthopedic maneuvers." (Tr. 863-64). The ALJ also noted that the correctional records did not confirm such a disabling physical impairment but reflected he was exercising in the gym. (Tr. 22). There is substantial evidence to sustain the ALJ's finding that "the objective evidence, examination findings, and treatment notes do not support the claimant's allegations." (Tr. 22).

There is also substantial evidence in the record that the claimant's limitations from depression and anxiety are "generally within normal limits" while the claimant is "compliant with medication." (Tr. 23). While the visitation notes do report periods of increased anxiety, they generally are linked to medication non-compliance or to the stress from pending matters related to Lacy's incarceration. During treatment sessions as part of his work release preparation, the notes indicate on several occasions that the claimant was doing "good" or "alright" and that he had scheduled job interviews. There are

10

also other treatment records showing instances of anxiety that appeared to interfere with the claimant's ability to think. Nonetheless, the court cannot say that these other notes evidence instances or circumstances which overwhelm the evidence cited by the ALJ or the conclusions drawn from it. The ALJ also highlighted a psychiatrist in prison who described Lacy as "very manipulative" and willing to "do anything in his power to get what he wants." (Tr. 23, 617). As far as memory problems, the ALJ pointed to a prison psychologist's report that, "Lacy complains of memory problems, but is able to recall very specific information, such as past medication doses and dates he took them." (Tr. 23, 567). The Commissioner's brief also cites the finding of "adequate short-term memory skills" included in the more recent consultative exam. (Tr. 859). While this credibility finding on mental limitations by the ALJ is certainly a closer call on which this court may have found differently, it is not for this court to displace the ALJ's finding simply because of contrary evidence. There is substantial evidence to sustain the ALJ's credibility evaluation of the Lacy's testimony and claims of disabling symptoms from his mental impairment.

The claimant next contends the ALJ's decision overstates or mischaracterizes his activities of daily living (ADLs) and denies that his ADLs are substantial evidence to support the ALJ's decision. The evidence of record sustains the ALJ's characterization of Lacy's ADLs, and the ALJ need not mention all of Lacy's indefinite and vague personal feelings ("too long," "longer

than it normally would," "let things go too long," and "really bad" decision-making skills) interjected to qualify his ADLs. (Tr. 245-248). The regulations spell out that "taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" are generally not considered to be substantial gainful activity. 20 C.F.R. § 404.1572(c). Still, "the nature of daily activities" is a relevant factor for evaluating symptom or pain testimony. *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013); *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (internal quotation marks and citation omitted). The ALJ, however, "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1490. Traveling by walking and mowing the yard are certainly inconsistent with the claimant's self-described limitation on standing. Though a court could have some concerns over the ALJ's reliance on the plaintiff's other limited daily activities, the balance of the ALJ's credibility analysis is supported by substantial evidence in the record. *Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir.2004).

The ALJ did not err in finding that despite an earlier alleged onset date of 1998 the claimant "had worked various jobs through 2008" which do not qualify as substantial gainful activity but which evidence that the claimant's daily activities have been greater on different occasions than what the claimant generally claims. (Tr. 23-24). A history of work activity certainly

is some evidence showing an inconsistency with a claimed inability to work. *See Petree v. Astrue*, 260 Fed. Appx. 33, 41 (10th Cir. Dec. 28, 2007); 20 C.F.R. § 404.1529(c)(3) (a "prior work record" is among the evidence considered in evaluating "symptom-related functional limitations" reported by a claimant). The ALJ did not give this factor undue weight. The balance of the ALJ's credibility analysis is closely and affirmatively linked to substantial evidence. "Credibility determinations are peculiarly the province of the finder of fact," and should not be upset "when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d at 391.

  The plaintiff argues the medical evidence does not support the RFC finding for the vision loss in his right eye. The ALJ accounted for the vision loss with a restriction for frequent use of "visual depth perception, field of vision and accommodation." (Tr. 19-20). The plaintiff fails to show any additional RFC limitation from his vision loss. *Arles v. Astrue*, 438 Fed. Appx. 735, 740 (10th Cir. Sept. 28, 2011). The ALJ's RFC finding is supported by Dr. Mary L. Tawdros' note affirming a similar RFC finding. The plaintiff has not shown an error in failing to order a consultative examination on vision loss. *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). Indeed, the plaintiff had held his prior jobs while suffering from the same vision loss.

  The plaintiff next argues that the physical RFC is not supported by medical evidence. In the absence of opinions from treating medical sources,

the ALJ properly relied on the opinions of state agency medical consultant Mary

Tawadros, M.D. and state agency psychologists, R.E. Schulman, Ph.D. and

Richard Maxfield, Ph.D. The plaintiff complains the ALJ wrongly gave

"substantial" weight to Dr. Tawadros' opinion which merely affirmed the RFC

prepared by the SDM.1 "[E]ven though the opinion of a SDM is worthy of no

weight as a medical opinion, a medical consultant might adopt the SDM opinion

as his own, and the resulting medical opinion is then properly evaluated to

determine whether it might be accorded particular weight in the

Commissioner's decision." *Gerard v. Colvin*, 2014 WL 2095169 at 4 (D. Kan.

May 20, 2014) (citing *Thongleuth v. Astrue*, No. 10–1101–JWL, 2011 WL

1303374, at *11–12 (D.Kan. Apr. 4, 2011)); *see Pelzer v. Colvin*, 2014 WL

1875163 at *3-4 (D. Kan. May 9, 2014) (ALJ did not err in relying on an

"opinion affirmed by an acceptable medical source" after reviewing the case in

its entirety). As in *Pelzer*, the RFC assessment by the SDM here included a

narrative discussion of the evidence in support of the findings all of which were

affirmed by an acceptable medical source. *Id;* (Tr. 83, 913). There is nothing of

record to show that Dr. Tawadros affirmed the RFC assessment based on an

erroneous impression of the SDM or the SDM's findings. As for later evidence,

---

1 An SDM is a single decision maker and "is not a medical professional of any
stripe, and the opinion of an SDM is entitled to no weight as a medical opinion,
nor to consideration as evidence from other non-medical sources." *Pelzer v.
Colvin*, 2014 WL 1875163 at *3 (D. Kan. May 9, 2014) (citing *Herrman v.
Astrue*, No. 09-1297-SAC (D. Kan. Sept. 29, 2010)).

the medical record of "3/18/2011" (Tr. 898) shows joint pain as part of Lacy's history, but the second page of this record does not include any musculoskeletal observations (Tr. 899). The plaintiff does not offer proof that Dr. Tawadros' review did not include the entire case as of May 16, 2011. (Tr. 913). The ALJ afforded substantial weight to Dr. Tawadros' RFC finding, because the opinion "was grounded in the evidence," involved "careful consideration of the objective medical evidence and the claimant's allegations regarding symptoms and limitations," and was "internally consistent and consistent with the evidence as a whole." (Tr. 24). The court does not find error in the ALJ's reliance on Dr. Tawadros' RFC finding.

The plaintiff next argues error in the ALJ giving substantial weight to Dr. Neufeld's opinion because the opinion was based on a consultative examination without a full review of the disability record and was issued over one and one-half years before the ALJ's decision. The plaintiff does not offer any argument on how a fuller review of the disability record would have impacted any of the Dr. Neufeld's opinions or necessarily would undermine the reliability of Dr. Neufeld's opinions drawn from his mental status examination and diagnostic interview. As for the period elapsed between December 30, 2010, the date of the consultative psychological evaluation, and July 5, 2012, the date of the ALJ's decision, the court follows the Third Circuit's approach:

> [T]here is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no

15

> limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that *in the opinion of the [ALJ]* ... may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. SSR 96–6p (July 2, 1996) (emphasis added).

*Chandler v. Commissioner of Social Sec.*, 667 F.3d 356, 361 (3rd Cir. 2011). The claimant did not ask the ALJ to make any such conclusion, and the claimant does not argue now that the ALJ wrongly handled additional medical evidence. The claimant fails to show that the ALJ lacked a timely and complete medical snapshot of the claimant when the decision was rendered.

The plaintiff also challenges the ALJ's reliance on Dr. Neufeld's opinion arguing that it is primarily a vocational, not medical, opinion, that the ALJ should have asked Dr. Neufeld to make specific functional limitation findings, and that the ALJ did not incorporate all of Dr. Neufeld's opinion into the RFC finding. The ALJ's decision correctly summarizes Dr. Neufeld's opinion "that the claimant would have great difficulty finding employment, but intellectually and emotionally was capable of entry-level employment." (Tr. 24). Dr. Neufeld linked Lacy's difficulty with how he "currently presents interpersonally" (Tr. 860). While there is a vocational component to that opinion, the ALJ still could weigh the opinion for its medical evaluation and did not have to reject the entire opinion. Dr. Neufeld's current mental status assessment of the claimant was "a considerable amount of anxiety and a moderately depressed mood," "evidence of obsessive thoughts and

16

ruminations," and "some evidence of projection of responsibility onto others." *Id*. A fair and reasonable reading of Dr. Neufeld's opinion is that Lacy's current mental status would make "finding employment" quite difficult but that Lacy's mental status did not interfere with his intellectual and emotional capacity to do entry-level work. The ALJ accounted for the limitations on interpersonal interaction with a RFC limitation for occasional interaction with coworkers and the general public. (Tr. 19). While Dr. Neufeld's opinion is hardly exhaustive, the court cannot say that it is so lacking or inconsistent or that the medical evidence of record on Lacy's mental impairment is so insufficient as to require recontact. The applicable regulations "provide that if an ALJ determines there is insufficient evidence to determine disability the ALJ 'may recontact [a] treating physician, psychologist, or other medical source,' 'request additional existing records' or seek further evidence from another source, including the claimant or a consultative examiner." *Holden v. Colvin*, 2013 WL 4096605 at *5 (W.D. Okla. Aug. 13, 2013) (quoting 20 C.F.R. § 404.1520b). The ALJ's order did not find insufficient evidence, and at the hearing on June 18, 2012, the claimant did not object to Dr. Neufield's report or argue for recontact. The court does not find error in the ALJ's assessment and handling of Dr. Neufeld's opinion.

Finally, the plaintiff takes issue with the ALJ giving substantial weight to the opinion of R.E. Schulman, Ph.D. as affirmed by Richard Maxfield,

17

Ph.D. The plaintiff's criticism of Dr. Schulman's opinion as given over a year before the ALJ's decision is rejected for substantially the same reasons given for denying plaintiff's same objection to Dr. Neufeld's opinion. As for the subsequent psychiatric hospitalization, the plaintiff does not point to what evidence in those records would have an impact on these medical opinions. The records at Lacy's discharge from the hospital and after medications were resumed, which also appear to be the most current medical evidence of record on his mental impairment, show that Lacy "denied being depressed with no signs or symptoms of depression" (Tr. 968) and with a current GAF score of 65 (Tr. 969). The court finds substantial evidence to sustain the ALJ's finding that Dr. Schulman's opinion is generally consistent with the medical evidence of the entire record.

Finally, the plaintiff complains that the ALJ used the RFC limitations from Dr. Schulman who found only mild difficulties in maintaining concentration, persistence and pace when the ALJ found moderate difficulties in this area and made no adjustment to the RFC limitations. The ALJ found that the claimant "has no more than a moderate limitation in concentration, persistence or pace and retains at least the capacity for simple, routine, repetitive tasks." (Tr. 18). Thus, the ALJ did include limitations directly linked to an RFC finding of simple, routine and repetitive tasks to his finding of a moderate limitation. By including the elements of routine and repetitive, the

18

ALJ's RFC finding is more restricted than what Dr. Schulman opined. (R. 884). There does not appear to be a factual or legal basis for the plaintiff's complaint here.

## ISSUE TWO: SUBSTANTIAL EVIDENCE THAT CAN RETURN TO PAST RELEVANT WORK

The claimant argues he could not perform his past relevant work as grocery stocker because his RFC limitation on occasional contact with co-workers is inconsistent with the description for grocery stocker found in the Dictionary of Occupational Titles ("DOT"). The vocational expert testified that a hypothetical person with the claimant's RFC could do the past relevant work of grocery stocker. (Tr. 72). By regulation, the ALJ certainly could consult a vocational expert on this topic and consider testimony on the physical and mental demands of a claimant's past relevant work. 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2). The court has read the DOT description, 920.687-014 for bagger or grocery, and disagrees that this description "clearly involves more than occasional interaction with the general public as well as co-workers. (Dk. 9, p. 54). There is nothing of record to detract from the vocational expert's testimony on this matter. "Even if the court were to find an apparent conflict, lacking vocational expertise, record evidence, or other admissible authority to establish that a conflict actually exists, the court would be compelled to accept the VE's undisputed testimony." *Thongleuth v. Astrue*, 2011 WL 1303374 at *19 (D. Kan. Apr. 4, 2011). The lay interpretation

19

of the DOT listings offered by claimant's counsel "are insufficient to contravene the direct testimony of the expert." *Id*. The court rejects this argument.

 IT IS THEREFORE ORDERED that the judgment be entered in accordance with sentence four of 42 U.S.C. § 405(g) affirming the Commissioner's decision.

 Dated this 15th day of August, 2014, Topeka, Kansas.


    s/Sam A. Crow      
    Sam A. Crow, U.S. District Senior Judge